# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE ALDAPE,

        Plaintiff-Appellant,

v

EMILY LYNN BALDWIN,

        Defendant-Appellee.

UNPUBLISHED
May 10, 2018

No. 336255
Wayne Circuit Court
LC No. 15-012679-NI

Before: CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

In this third-party no-fault action, plaintiff Diane Aldape appeals as of right the trial court's order granting defendant Emily Baldwin's motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

Plaintiff and defendant were involved in a minor auto accident in October 2012. According to plaintiff, she was driving from her apartment to a counseling consultation at the Downriver Guidance Center for her depression issues. Plaintiff testified that she was stopped at an intersection and defendant rear-ended her vehicle. According to plaintiff, "it wasn't that bad of a collision" and the only damage caused to her vehicle was a bent license plate and loose stereo wires. Plaintiff refused medical assistance at the scene. She then drove to her counseling appointment at the Guidance Center, where she complained of back pain. Plaintiff was advised by Guidance Center staff to go to an urgent care, and plaintiff did, after she first picked up her children from school. At the urgent care, plaintiff complained of lower-back and neck pain; however, the doctor examining plaintiff could find nothing wrong with her neurologically. He prescribed plaintiff pain medicine and offered her x-rays, but she refused the x-rays. The urgent-care doctor did not order MRIs or CT scans. Plaintiff did not seek further treatment for any neck or back pain for over a year.

In November 2013, plaintiff sought treatment from a chiropractor, Dr. Richard Stanley. Plaintiff reported to Dr. Stanley that she did not have any neck or back pain before the October 2012 accident, but that she experienced severe neck and back pain afterwards. Dr. Stanley began working with plaintiff to ease her pain and referred her to Dr. Peter Grain, who performed an MRI on plaintiff's lumbar spine, i.e., her lower back, as well as her cervical spine, i.e., her neck.

-1-

Dr. Grain's MRI (the 2013 MRI) revealed that plaintiff suffered from a straightening of her spinal curvature and disc bulges at the C3-C4, C4-C5, C6-C7, L3-L4, L4-L5, and L5-S1 vertebrae.

Plaintiff filed the instant suit against defendant in September 2015. Plaintiff claimed that defendant negligently caused the October 2012 auto accident, resulting in injuries to plaintiff's neck and back that seriously impaired her ability to perform the daily functions of her life. Plaintiff testified that the injuries to her neck and back prevented her from driving for any length of time, standing or sitting for long periods, cooking, cleaning, shopping, exercising, or bathing herself. Plaintiff also testified that she was more depressed since the accident.

While discovery was still open, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued that she was entitled to summary disposition because plaintiff could not prove that the 2012 auto accident caused her injuries or seriously impacted her life. Defendant attached numerous documents to her brief, several of which tended to show that plaintiff's injuries and restrictions predated the 2012 auto accident.

First, defendant attached the report from an MRI performed on plaintiff's lumbar spine in 2011 (the 2011 MRI). The 2011 MRI showed that plaintiff suffered from disc bulges at the L3-L4, L4-L5, and L5-S1 vertebrae. Importantly, these are the same disc bulges that are shown on plaintiff's lumbar spine in the 2013 MRI. The straightened spine noted in the 2013 MRI is also listed on the 2011 MRI. The 2011 MRI further notes that plaintiff had a "Clinical History" of back pain. The 2011 MRI did not, however, address plaintiff's cervical spine.

Second, defendant attached the deposition testimony of Dr. Johnson, who testified that he treated plaintiff in her home in July 2012, at which time plaintiff complained of neck pain and stiffness and tingling in her back. Dr. Johnson also testified that plaintiff's symptoms remained generally the same throughout his treatment of her, which extended until at least November 2014.

Third, defendant attached several documents relating to plaintiff's Social Security Disability eligibility and income. On a February 2005 function report contained within those documents, plaintiff indicated that she was unable to do house or yard work, that she was unable to drive because she got dizzy, that she could only shop occasionally, and that she was limited in walking. In that same function report, plaintiff's then-husband indicated that plaintiff could not cook and did not bathe frequently because the "water hurts" her. Plaintiff's then-husband also indicated that plaintiff had "leg, back and shoulder problems."

Fourth, defendant attached several oncology reports from a clinic that was treating plaintiff for breast cancer. The oncology reports reveal that plaintiff had surgery on a mass in her left breast roughly one month before the accident. From January 2013 until March 2016, plaintiff complained of pain in her left armpit and breast, sometimes radiating to her back. The oncology clinic described this pain as "pain from radiation dermatitis." By all accounts, plaintiff's cancer was in remission by the time this action was filed.

Defendant also attached to her motion the independent medical examinations of three doctors who examined plaintiff shortly before or during the pendency of this action. Each doctor

concluded that plaintiff only suffered minor strain injuries in the 2012 auto accident and that those injuries would have subsided shortly after the accident. Each doctor opined that the 2012 auto accident did not cause plaintiff to suffer any permanent or debilitating injuries. Finally, defendant attached the report of an MRI performed in 2015 (the 2015 MRI), which showed no disc bulging anywhere on plaintiff's spine and that her spine was not straightened.

Plaintiff responded to defendant's motion arguing, among other things, that a question of fact existed as to whether the auto accident caused her to suffer injuries that affected her ability to participate in her pre-accident daily life. Regarding her ability to participate in her pre-accident daily life, plaintiff noted her own deposition testimony in which she documented the restrictions the accident allegedly placed upon her life. To rebut defendant's argument that the 2012 auto accident did not cause plaintiff's injuries, plaintiff provided the deposition testimonies of Dr. Grain and Dr. Stanley. Dr. Grain testified that the disc bulging present in the 2013 MRI "could be from trauma, as well as it could be from the aging process." Dr. Grain opined that, "given the history the patient related, the findings on the MRI scan are more likely related to trauma [than] not." Dr. Stanley testified that, on her initial intake form in September 2013, plaintiff indicated that she was suffering from neck and back pain, among other ailments, as a result of the 2012 auto accident. According to Dr. Stanley, plaintiff told him that she did not have any neck or back pain before the accident. Dr. Stanley examined plaintiff and referred her for an MRI. Dr. Stanley testified that the disc bulges noted on plaintiff's 2013 MRI were unusual without some sort of trauma. Based on his examination of plaintiff and the history plaintiff reported to him, Dr. Stanley concluded that the 2012 auto accident was the source of plaintiff's injury; however, Dr. Stanley testified that, had he been told that plaintiff suffered pre-accident neck and back pain, he would have had to take that history into account when making his determination.

During the hearing on defendant's motion, the trial court noted that, because Dr. Grain and Dr. Stanley were not privy to the 2011 MRI, their opinions would be inadmissible at trial under MRE 702 for lacking a sufficiently reliable factual basis. Given this, the trial court determined that it could not consider Dr. Grain's and Dr. Stanley's opinions when ruling on defendant's summary-disposition motion. The trial court concluded that, given the pre-accident documentation of plaintiff's neck and back injuries and the independent medical opinions of doctors examining plaintiff after the accident, defendant had met its initial burden to show that the 2012 auto accident was not the cause of plaintiff's injuries. Because it could not consider the testimony of Dr. Grain or Dr. Stanley, and plaintiff offered no other evidence of causation, the trial court concluded that plaintiff had failed to meet her burden to show that a genuine issue of material fact existed as to whether the 2012 auto accident caused plaintiff's injuries. Moreover, the trial court concluded that, because plaintiff's severe pre-accident limitations were well-documented and plaintiff had only offered generalizations about her post-accident limitations, plaintiff had failed to meet her burden to show that a genuine issue of material fact existed as to whether the 2012 auto accident impaired her ability to lead her normal pre-accident life. Accordingly, the trial court granted summary disposition to defendant.

This appeal followed.

## II. ANALYSIS

This Court reviews "a grant of summary disposition de novo." *Peters v Department of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Under this court rule, a party "may move for dismissal of or judgment on all or part of a claim," MCR 2.116(B)(1), when, "[e]xcept as to the amount of damages, there is no genuine issue concerning any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law," MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court considers "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

*The No-Fault Act*. "In 1973, the Michigan Legislature adopted the no-fault insurance act, MCL 500.3101 *et seq.*" *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517, 523 (2010). "The act created a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *Id*., citing MCL 500.3101; MCL 500.3105. In exchange for ensuring prompt recovery for an injured plaintiff's economic loss, the act limited tort liability for "non-economic loss arising out of the ownership, maintenance or use of a qualifying motor vehicle" to those situations where the defendant's negligent " 'ownership, maintenance, or use' " of a motor vehicle caused the injured person to suffer " 'death, serious impairment of body function, or permanent serious disfigurement.' " *Id*. at 189-190, citing MCL 500.3135(3), quoting, MCL 500.3135(1).

In this case, plaintiff has argued that defendant negligently caused the October 15, 2012, auto accident, and the accident caused plaintiff to suffer a serious impairment of her neck and back. In *McCormick*, 487 Mich at 215-216, the Supreme Court summarized the statutory test for determining whether a plaintiff is entitled to recovery under MCL 500.3135 for a serious impairment of a bodily function as follows:

> To begin with, the [trial] court should determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met. MCL 500.3135(2)(a)(*i*) and (*ii*). If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court. *Id*.

> If the court may decide the issue as a matter of law, it should next determine whether the serious impairment threshold has been crossed. The unambiguous language of MCL 500.3135(7) provides three prongs that are necessary to establish a "serious impairment of a body function": (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living).

The serious impairment analysis is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis. . . . The analysis does not lend itself to any bright-line rule or imposition of a nonexhaustive list of factors, particularly where there is no basis in the statute for such factors. Accordingly, because the Legislature avoided drawing lines in the sand so must we. [(Internal case citations and notation omitted).]

*Application to This Plaintiff*. We affirm the trial court's grant of summary disposition to defendant under MCR 2.116(C)(10). Assuming defendant's negligence, plaintiff has not met her burden to show that the accident caused her injuries.

The record contains several pre-accident pieces of evidence. First, the 2011 MRI shows disc bulges at the L3-L4, L4-L5, and L5-S1 vertebrae on plaintiff's lumbar spine and a straightening of the spinal curvature. Next, documents plaintiff filed with the Social Security Administration before the accident indicate that plaintiff was suffering from back pain. The 2011 MRI does not address plaintiff's neck. Nonetheless, Dr. Johnson testified that, during his treatment of plaintiff before the accident in July 2012, plaintiff complained of both neck pain and stiffness and tingling in her back.

A 2013 MRI of plaintiff's lumbar spine revealed that plaintiff had disc bulging at the L3-L4, L4-L5, and L5-S1 vertebrae and a straightened spine. Importantly, these are the same vertebrae that showed disc bulging in 2011 and the same vertebrae that plaintiff claims were damaged in the 2012 auto accident. The 2013 MRI also showed disc bulging in several of plaintiff's vertebrae in her cervical spine. Defendant attached to her motion the independent opinions of several doctors, all of which concluded that plaintiff's back and neck injuries were not the result of her accident.

Defendant extensively documented this evidence in her motion for summary disposition and, in doing so, met her initial burden to show that no material question of fact existed that plaintiff's injuries were not caused by the 2012 auto accident. When a motion under MCR 2.116(C)(10) is made and supported by sufficient documentation, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or [other documentary evidence], set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). Consequently, the burden fell to plaintiff to show that a material question of fact existed as to whether the 2012 auto accident caused her back and neck injuries. To rebut defendant's evidence, plaintiff offered the testimony of Dr. Stanley and Dr. Grain, both of whom she claimed opined that plaintiff's injuries resulted from the auto accident.

On appeal, plaintiff argues that the trial court erred by concluding that the opinions of Dr. Stanley and Dr. Grain would not be admissible at trial. We disagree. In determining whether to grant a motion for summary disposition, the trial court may only consider substantively admissible evidence. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Although the evidence does not have to be in an admissible form at the time a summary disposition motion is considered, the substance of the evidence must be admissible. *Id*.

A trial court may admit testimonial evidence of an expert opinion under MRE 702 if the trial court determines that "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." See *Figurski by Linden* v *Trinity Health-Michigan,* ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 154390), slip op at 1-2 (Markman*,* C.J.*,* dissenting). "[I]t is invariably for the *proponents* of expert testimony to demonstrate that such evidence is sufficiently reliable." *Id*. at ___, slip op at 3 (Markman, C.J., dissenting). The trial court's admission of expert testimony is an exercise of the trial court's reasonable discretion and, as such, will only be overturned when the trial court's decision "falls outside the range of principled outcomes." *Id*. at ___, slip op at 3.

Here, the record makes clear that Dr. Stanley and Dr. Grain did not have the benefit of the 2011 MRI when making their determinations regarding the cause of plaintiff's injuries. Rather, the record indicates that both doctors relied on the medical history plaintiff provided—in which plaintiff claimed to have no back or neck pain before the accident—and their own medical examinations of plaintiff to reach their conclusions that the accident caused plaintiff's injuries. Plaintiff essentially asks this Court to ignore the materially incomplete history she provided to the doctors and focus on their testimony that their examinations of plaintiff revealed that the accident caused plaintiff's injuries. The history plaintiff provided and the doctors' examinations, however, are inextricably intertwined. Carefully examining each doctor's testimony, the doctors testified that plaintiff's injury was most likely related to some sort of trauma. The doctors then correlated that general finding with the fact that plaintiff was involved in an auto accident to come to the more-specific conclusion that the auto accident caused plaintiff's injuries. The history that plaintiff reported, in which she purportedly did not suffer any pain or injury before the auto accident, is the key to providing context to her injuries—the catalyst for moving from a general diagnosis of unspecified-trauma injuries to the narrow diagnosis of injuries caused by an auto accident. Without access to all of the materially relevant medical information, the opinions of plaintiff's experts were fundamentally deficient. Given this, the trial court did not abuse its discretion in concluding that plaintiff's expert opinions were not reliable under MRE 702.

On appeal, plaintiff argues that her expert testimony would be admissible at trial despite the fact that her doctor's deposition testimony was not based on a reliable history. Plaintiff takes issue with the fact that defendant never showed the 2011 MRI to her doctors during their depositions and essentially argues that her doctors could render an accurate opinion at trial if provided with the pre-accident MRI. Yet, plaintiff's argument ignores the fact that she held the burden, both under MCR 2.116(C)(10) and MRE 702, to show that her doctors' opinions would be reliable. Indeed, discovery was still open at the time defendant's motion for summary disposition was filed. Plaintiff could have provided the doctors with a copy of the 2011 MRI and obtained further sworn testimony indicating whether the doctors' opinions would have changed if they had been aware of plaintiff's pre-accident back and neck injuries. Because plaintiff did not do so, she failed to meet her burden to show that Dr. Stanley's and Dr. Grain's testimonies would be admissible at trial and failed to meet her burden to show that a genuine issue of material fact existed with regard to whether the 2012 auto accident caused her injuries.

A plaintiff is only entitled to recovery in tort for injuries caused by the allegedly tortious event. As there is no genuine issue of material fact on the lack of causation here, defendant was entitled to judgment as a matter of law. Plaintiff argues that the trial court erroneously

-6-

concluded that she was required to pay her doctors a retainer fee before the doctors could testify as experts. Although we disagree with plaintiff's characterization of the trial court's ruling, because plaintiff's doctors' testimony would not otherwise be admissible under MRE 702, we need not address this issue. Similarly, we do not address defendant's alternative argument that plaintiff has not suffered a serious impairment of a body function.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle